NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM BRADSHAW, | ) | No. C 08-01787 JF (PR) |
| Petitioner, | ) ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | ) ) | |
| B. CURRY, Warden, | ) ) | |
| Respondent. | ) ) ) | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Board of Prison Terms ("the Board") to deny him parole. The Court found that the petition stated cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

///

///

///

**BACKGROUND**

On December 4, 1987, Petitioner was sentenced to a term of fifteen years to life in state prison after his conviction for second degree murder in Orange County Superior Court. Petitioner challenges the decision of the Board of Parole Hearings ("the Board") denying him parole after his February 8, 2006 parole suitability hearing. Petitioner filed habeas petitions in the state superior, appellate, and supreme courts, all of which were denied as of March 14, 2007. Petitioner filed the instant federal petition on August 7, 2007.[1]

**DISCUSSION**

**I.   Standard of Review**

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the

---

[1] Petitioner filed the petition in the United States District Court for the Central District of California. The petition was transferred to this Court on April 24, 2008 and filed in a new habeas action, case no. C 08-2025 JF (PR). This Court issued an order closing the C 08-2025 JF (PR) matter and directing the Clerk to transfer the documents to the instant habeas action.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.08\Bradshaw787_denyHC-parole.wpd

writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Superior Court for the County of Orange. (Resp't Ex. B (In re William Bradshaw, Case No. M-10957, Aug. 18, 2006).)

## II. Legal Claims and Analysis

As grounds for federal habeas relief, Petitioner alleges: (1) the denial of his federal liberty interest in parole is contrary to and an unreasonable application of the "some evidence" standard set forth in Superintendent v. Hill 472 U.S. 445 (1985), in violation of 28 U.S.C. § 2254(d)(1); and (2) the denial of his federal liberty interest in parole is an unreasonable determination of the facts in light of the evidence presented, pursuant to § 2254(d)(2), because "clear and convincing" evidence disproves any threat to the public if Petitioner was granted parole.

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13, 2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003). In accordance with this circuit's precedent, the Court will review whether the Board's decision to deny parole comports with due process.

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal may be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, "if the Board's determination of parole

suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California Code of Regulations, title 15, section 2402(a) provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[2]

Recently, the Ninth Circuit reheard en banc the panel decision in Hayward v.

---

[2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit., 15 § 2402(d).

1  Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th. Cir.
2  2008), which presented a state prisoner's due process habeas challenge to the denial of
3  parole.  The panel opinion concluded that the gravity of the commitment offense had no
4  predictive value regarding the petitioner's suitability for parole and held that the
5  governor's reversal of parole was not supported by some evidence and resulted in a due
6  process violation.  512 F.3d at 546-47.  The Ninth Circuit has not yet issued an en banc
7  decision in Hayward.

8  Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it
9  remains the law in this circuit that California's parole scheme creates a federally
10 protected liberty interest in parole and therefore a right to due process, which is satisfied
11 if some evidence supports the Board's parole suitability decision.  Sass, 461 F.3d at 1128-
12 29.  These cases also hold that the Board may rely on immutable events, such as the
13 nature of the conviction offense and pre-conviction criminality, to find that the prisoner is
14 not currently suitable for parole.  Id. at 1129.  Biggs and Irons also suggest, however, that
15 over time, the commitment offense and pre-conviction behavior become less reliable
16 predictors of danger to society such that repeated denial of parole based solely on
17 immutable events, regardless of the extent of rehabilitation during incarceration, could
18 violate due process at some point after the prisoner serves the minimum term on his
19 sentence.  See Irons, 505 F.3d at 853-54.

20 The record shows that on February 8, 2006, petitioner appeared with counsel
21 before the Board for a parole consideration hearing.  (Resp't Ex. A, Ex. A; Hr'g Tr.)  The
22 Board's decision denying parole in this case was based upon its review of the nature of
23 the commitment offense, Petitioner's prior criminal and social history, and behavior and
24 programming during imprisonment.  The Board concluded that Petitioner was "not
25 suitable for parole and would pose an unreasonable risk of danger to society or a threat to
26 public safety if released from prison."  (Id. at 78.)  The Board found that the commitment
27 offense was carried out: 1) "in an especially cruel and callous manner in that [Petitioner]
28 shot [his] vulnerable, estranged wife in the chest and knee,"; and 2)"in a dispassionate

and calculated manner in that after reportedly telephoning and threatening the life of [his estranged wife's lover] [Petitioner] went to the victim's residence armed." (Id.)  The Board also found that the offense was carried out in a manner "demonstrating exceptionally callous disregard for human suffering" because Petitioner had "previously ransacked [his] victim's home thereby instilling fear and terror in her."  (Id. at 78-79.) Petitioner shot into his estranged wife's home from the outside, then broke into her home and shot his wife twice and then continued to beat her with the pistol.  (Id. at 69.)  His wife died as a result of the gunshot wounds to her chest and injuries to her head where Petitioner had hit her.  (Id. at 80-81.)  The Board determined that there was "considerable risk to public safety in that others could have been killed or injured" and that Petitioner had a clear opportunity to cease but continued in his actions.  (Id. at 81.)  The Board found that the motive for the crime was "very trivial in relation to the offense in that it was jealousy and by [Petitioner's] own testimony... [he] couldn't let her go."  (Id.)  The Board noted Petitioner's history of alcohol and poly-substance abuse to which Petitioner had readily admitted.  (Id. at 79.)  The Board also considered Petitioner's parole plans which it found to be "questionable" as Petitioner was planning to take up residence with his new wife with home he had never lived.  (Id. at 80.)  Lastly, the Board expressed concern that Petitioner was still a threat to public safety because he needed more time to deal with his rage issues: "In order for you to not be a risk, we need to see that you are strong enough, that the next stressful situation that could occur will not break you down and have something terrible occur as a result in terms of public safety. That is the concern. So we feel that you would benefit from further time here."  (Id. at 82- 83.)

      The Board acknowledged the presence of several factors tending to show suitability: 1) educational advancements; 2) vocational work; 3) some participation in self-help programs; 4) lack of disciplinary actions; and 5) generally supportive psychological report from 2005.  (Id. at 79.)  However, the Board concluded that the positive aspects did not outweigh the factors of unsuitability and denied parole for two years.  (Id. at 81.)

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.08\Bradshaw787_denyHC-parole.wpd

In its order denying habeas relief, the state superior court determined that the record contained some evidence to support the Board's finding that Petitioner was unsuitable for parole. The court made the following observations:

> The [Board] may deny parole if it determines the gravity of the commitment offense is such that consideration of public safety requires more incarceration. (Pen. Code, § 3041, subd. (B); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071 [BPH "may protect public safety" by "considering the dangerous implications" of the commitment offense.].) Thus, while the [Board] must point to factors "beyond the minimum elements of the crime... it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." (*In re Dannenberg, supra*, at p. 1071.) In other words, if the [Board] determines the gravity of the commitment offense "is such that consideration of the public safety requires a more lengthy period of incarceration," it may deny parole without proceeding to consider and analyze the other suitability factors such as prison behavior and parole plans. (*Ibid.*)
>
> That is precisely what occurred here. The [Board] verbalized that its concern was "the next stressful situation that could occur" and stated it could not grant Petitioner a parole date until it believed his release would not present an unreasonable risk to public safety. It then expressed that there are many opportunities for rage to occur in our communities today. It wanted Petitioner to have the tools he needed to deal with rage, because its primary concern was "how much risk [he] would be to public safety."
>
> In denying parole for two years, the [Board] mentioned Petitioner's parole plans, but it relied on its belief that Petitioner would present an unreasonable risk to public safety if released immediately. Likewise, in announcing a two-year denial, the [Board] explained to Petitioner that the prison system probably could not offer him the program he needed and he would have to undertake a particular self study. It estimated the self study would take two years. To return for an earlier parole hearing would be a stress and would result in frustration.
>
> Thus the [Board's] two-year denial was supported by the circumstances of the commitment offense and by its particular instructions to Petitioner. The [Board] therefore acted lawfully and did not violate constitutional or statutory law in reaching its decision. (Pen. Code, § 3041, subd. (B); *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071.)

(Resp't Ex. B at 3-4.)

The state superior court found that the Board properly considered the nature of Petitioner's commitment offense in its decision to deny parole because it constituted evidence that Petitioner posed a current threat to public safety. See In re Rosenkrantz, 29 Cal. 4th 616, 682-83 ("the [Board] properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant"). Based on its consideration

of the commitment offense, the Board found that Petitioner remained an "unreasonable risk of danger to society if released from prison." Cal. Code of Reg., tit. 15, § 2402(a); see *supra* at 6. Accordingly, the Board's findings are supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904).

Petitioner claims that the denial of parole is unconstitutional because there is "clear and convincing" evidence that he does not pose a threat to the public. The AEDPA requires a district court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003) (reversing judgment of 6th Circuit granting habeas relief on de novo review where claims did not meet standards for relief under § 2254(d)(1)). Petitioner has failed to meet his burden to rebut the presumption that the factual determinations by the state court in the underlying state conviction were other correct. The state superior court reviewed the facts of Petitioner's commitment offense in denying his habeas petition:

> Petitioner discovered his estranged wife was having an affair. Petitioner telephoned her and told her he was coming to her residence to kill the man she was involved with. When Petitioner arrived at the residence, however, the man was not there. Petitioner fired the gun at his estranged wife twice and then hit her in the head with the gun. She sustained bullet wounds to the knee and the chest, as well as head injuries. She died from the chest wound and the heand injuries.

(Resp't Ex. B at 1-2.) Based on these facts, the state court found that the Board's decision to deny parole did not violate constitutional or statutory law. (Id. at 4.)

This Court concludes that Petitioner's due process rights were not violated by the Board's decision to deny parole. Accordingly, the state courts' decisions were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2).

**CONCLUSION**

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings and parole hearing. Accordingly, the petition for writ of habeas corpus is DENIED.

IT IS SO ORDERED.

Dated: 10/1/09

_____
JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM BRADSHAW,

        Petitioner,

  v.

BEN CURRY, Warden,

        Respondent.

Case Number: CV08-01787 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 10/5/09, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

William Bradshaw D-73217
Correctional Training Facility
P.O. Box 689
GW-325-U
Soledad, CA 93960-0689

Dated: 10/5/09

Richard W. Wieking, Clerk